```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**ANITA M. GEORGE, RODERICK R. GEORGE,**
**SYLAS RYAN TRUMAN GEORGE, an infant,**
**and MAZZIE G. GEORGE, an infant**
**member of the household of Anita M.**
**George and Roderick R. George, her**
**psychological parents and custodians,**

        **Plaintiffs,**

**v.**                           //    **CIVIL ACTION NO. 1:07CV90**
                                       **(Judge Keeley)**

**LABORATORY CORPORATION OF AMERICA**
**HOLDINGS, a Delaware Corporation,**
**LARENDA JOHNSON, JASMIN OSMAN, JOHN**
**DOE, which is a pseudonym for a**
**presently unknown person, JANE DOE,**
**which is a pseudonym for a presently**
**unknown person and UNKNOWN OTHERS,**

        **Defendants.**

## ORDER GRANTING DEFENDANT'S PARTIAL MOTION TO DISMISS

Pending before the Court is a "Motion for Partial Dismissal of Amended Complaint" filed by defendants Laboratory Corporation of America Holdings, Larenda Johnson, and Jasmin Osman (jointly referred to as "Lab. Corp.") on July 25, 2007. Lab. Corp. moves to dismiss Count B of the amended complaint filed by plaintiffs Anita George ("George"), a former employee of Lab. Corp., her husband Roderick George, her biological child Sylas Ryan Truman George, and her psychological and custodial child, Mazzie George. In addition, Lab. Corp. seeks to dismiss the loss of consortium claims asserted by Roderick George, Sylas George, and Mazzie George in Counts C, D, E and F of the amended complaint.

**GEORGE ET AL. v. LABORATORY CORP. OF AMERICA, ET AL.    1:07CV90**

**ORDER GRANTING DEFENDANT'S PARTIAL MOTION TO DISMISS**

## I. FACTS AND PROCEDURAL HISTORY

George began working for Lab. Corp. (then Roche Biomedical Laboratories, Inc.) in 1984, and continued working for the company until she was terminated on June 1, 2005. At the time of her termination, George was working as a Human Resource Consultant in Lab. Corp.'s Fairmont, West Virginia office. Her supervisor, Larenda Johnson ("Johnson"), worked in the Dublin, Ohio office.

George asserts that, during a phone conversation on February 1, 2005, she told Johnson that "Johnson was losing respect from Managers/Supervisors that [George] worked with because [Johnson] was not opening and responding to E-mail and voice mail." Two days later, Johnson allegedly informed George that she should start preparing for a "reduction of force" that would happen "today, tomorrow, next week or next year," and that if the reduction occurred, George would receive a severance package totaling $17,480.00, plus other benefits.

On March 2, 2005, Johnson informed George and others that Lab. Corp. employee Jasmin Osman would be randomly auditing closed requisition files. Johnson informed the employees that, if the files were not in complete compliance with the standard operating procedures of Lab. Corp., the non-compliance would be a ground for termination.

On June 1, 2005, Johnson traveled to Lab. Corp.'s Fairmont office and terminated George for alleged performance deficiencies, willful policy violations and insubordination.

George filed the underlying complaint in the Marion County Circuit Court on June 1, 2007, and an Amended Complaint on June 4, 2007. On July 5, 2007, Lab. Corp. removed the case to this Court based on diversity jurisdiction. Lab. Corp. then filed "Defendant's Answer to Amended Complaint" and this "Motion for Partial Dismissal of Amended Complaint" on July 25, 2007. Lab. Corp.'s partial motion to dismiss alleges two grounds on which George and her family have failed to state a claim on which relief to be granted, which are the retaliatory discharge claim in Count B, and the loss of consortium claims flowing from the promissory estoppel claims in Counts C, D, E and F.

## II. LEGAL ANALYSIS

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." In ruling on a Rule 12(b)(6) motion, a court must "take all wellpleaded material allegations of the complaint as admitted and view them in the light most favorable to the plaintiff." Dunn v. Borta, 369 F.3d 421, 423 n.1 (4th Cir. 2004) (quoting, DeSole v. U.S., 947 F.2d 1169, 1171 (4th Cir.

3

1991).  "In general, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief."  Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

### A.  Count B Retaliatory Discharge Claim

In Count B of her amended complaint, George contends that she engaged in protected activity when she told Johnson that her fellow employees were unhappy with Johnson's job performance.  Three days later, Johnson informed George that she would be subjected to a reduction in force at some future, unknown date.  George asserts that this close temporal proximity establishes that she was terminated in retaliation for that speech.

Lab. Corp. seeks to dismiss George's claim for retaliatory discharge, asserting that neither West Virginia nor federal constitutional law protects private-sector employees from being terminated by their employer for speech in the workplace.

The West Virginia Supreme Court of Appeals has held that "the Free Speech Clause of the state constitution is not applicable to a private sector employer."  Tiernan v. Charleston Area Medical Center, Inc., 506 S.E.2d 578, 591 (W.Va. 1998).  Therefore, "an employee does not have a cause of action against a private sector

employer who terminates the employee because of the exercise of the employee's state constitutional right of free speech." Id.

George relies on Novosel v. Nationwide Insurance Co., which holds that "Pennsylvania law permits a cause of action for wrongful discharge where the employment termination abridges a significant and recognized public policy," including policy emanating from that state's free speech clause. 721 F.2d 894, 898-99 (3rd Cir. 1983). George acknowledges that Tiernan specifically declined to apply the Novosel reasoning in West Virginia, and, in fact, referred to Novosel as "dubious authority." 506 S.E.2d at 589. George, however, argues that, in Tiernan, West Virginia's highest court did not reject Novosel on the basis of the First Amendment of the United States Constitution, and she asks this Court to consider such an extension of law.

George further cites the dissent in Tiernan, in which Justice Starcher proposes to extend West Virginia law so that,

> "[private sector] employees who are terminated for speech that is not substantially related to their employer's legitimate concerns may use the court system to protect and vindicate their right - indeed, their civic duty - to participate fully in our democracy by exercising their right to free speech."

Tiernan, 506 S.E.2d at 598 (Starcher, J., dissenting). In essence, Justice Starcher contends that West Virginia should allow private sector employees to bring a wrongful discharge claim if they have

5

been disciplined for speech that was not "clearly and substantially related to legitimate employer interests." Id. This view was not adopted by the majority of the West Virginia Supreme Court of Appeals, however, and is not the law in West Virginia today.

In Novosel, the Third Circuit Court of Appeals based its decision entirely on Pennsylvania's constitution and case law. No federal court has extended the holding in Novosel to the First Amendment of the United States Constitution. In fact, as the West Virginia Supreme Court of Appeals noted in Tiernan, its research had failed to uncover any "federal court which applies the First Amendment Free Speech Clause to private employers." 506 S.E.2d at 590. Rather, it is well established that the protections guaranteed by the First Amendment of the United States Constitution do not extend to private-sector employees. See, e.g., Hudgens v. NLRB, 424 U.S. 507, 513 (1976) ("It is, of course, a commonplace that the constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state. Thus, while statutory or common law may in some situations extend protection or provide redress against a private corporation or person who seeks to abridge the free expression of others, no such protection or redress is provided by the Constitution itself.")

George's argument to extend First Amendment protections to

employees in the private sector is unpersuasive; this Court, therefore, declines to extend the law in such direction at this time. George's claim against Lab. Corp. for retaliatory discharge predicated on alleged protected free speech therefore fails.

**B.  Counts C, D, E and F Loss of Consortium Claims**

In Counts C, D, E and F of the amended complaint, George asserts claims for relief based on promissory estoppel, a remedy arising in contract law. For each of these counts, Roderick George, Sylas George and Mazzie George assert claims for loss of consortium.

In Count C, George asserts that she was never provided with a Standard Operating Procedure ("SOP") by which to gage her performance as an employee for Lab. Corp. She alleges that she was led to believe that Lab. Corp. was satisfied with her job performance because she received evaluations of "great" to "outstanding" for several years. In various evaluation areas, these evaluations ranged from eighteen to twenty on a scale of one to twenty with a total score ranging from 90-93. George therefore asserts that the policies, customs and practices of Lab. Corp. implied that she had a "permanent employment contract or other substantial employment right."

In Count D, George alleges that she was led to believe that

she would receive a written reprimand if her job performance was unsatisfactory. Specifically, she thought she would be informed of any problems on her evaluation analysis. She also expected to be subjected to disciplinary actions before termination, and thought that she would receive an exit interview if she was to be terminated. George again asserts that the policies, customs and practices of Lab. Corp. implied that she had a "permanent employment contract or other substantial employment right."

Similarly, in Count E, George contends that Johnson informed her that she would not be "subject to a reduction in force" until after the third quarter in 2005, which would have provided her with employment through August 31, 2005. Johnson also allegedly indicated that, when the time came, George would receive a severance package. George maintains that Lab. Corp. fired her "in spite of promissory estoppel by implication" from Lab. Corp.'s policies, customs, practices and the express promise that George was not going to be subject to "a reduction in force" until after the third quarter of 2005.

Finally, in Count F, George asserts that she worked for Lab. Corp. (or its predecessors) for twenty-one and a half years without knowledge of an SOP. She contends that the conditions of her employment contract were modified without consideration when

Johnson informed her that Osman would be auditing files, and that incomplete files would be considered a "terminating offense." George again asserts that Lab. Corp.'s policies, customs and practices implied that she had a "permanent employment contract or other substantial employment right."

In its partial motion to dismiss, Lab. Corp. originally sought to dismiss all claims asserted by plaintiffs Roderick George, Sylas George and Mazzie George. After George's reply brief pointed out that West Virginia recognizes spousal and parental loss of consortium claims, Lab. Corp. informally changed its position to only seek dismissal of the loss of consortium claims arising from the four promissory estoppel claims in counts C, D, E and F.

Lab. Corp. asserts that no claim for consortium exists where the alleged underlying action is based in contract rather than tort. See Carolyn Kelly MacWilliam, J.D., 24 Causes of Action 2d 427 § 13 (2007) ("Where the injury allegedly resulted from a breach of contract by the defendant, not tortious conduct, there may be no right to recover for loss of consortium").

The West Virginia Supreme Court of Appeals has not directly addressed this issue. A review of West Virginia case law, however, indicates that claims for loss of consortium must be predicated upon an underlying tort claim, not a contract claim such as

9

promissory estoppel.

In Shreve v. Faris, a seminal West Virginia loss of consortium case, the Supreme Court of Appeals repeatedly framed loss of consortium claims as arising from a spouse's injury caused by a defendant's negligence, thus implying that a loss of consortium claim would arise in an action in tort. 111 S.E.2d 169, 173 (W.Va. 1959).

Similarly, in Nelson v. WV Pub. Employees Ins. Bd., the Supreme Court of Appeals contrasted the likelihood of parties settling a tort claim versus a contract claim:

> *In personal injury suits*, the prospect of substantial jury awards for rather nebulous components of the injury such as pain and suffering or *loss of consortium* operates as a countervailing incentive against the defendant going all the way to trial. *In contract disputes*, . . . the precision with which the exact damages may be determined prevents this kind of a disincentive from operating.

300 S.E.2d 86, 96 (W.Va. 1982) (emphasis added).

In Poling v. Motorists Mut. Ins. Co., the West Virginia Supreme Court of Appeals ruled that "the wife of a plaintiff in an insurance bad faith case may recover damages for loss of consortium" but only if the wife can show "that the loss of consortium flows from the insurer's delay and not from the original injury suffered by the other spouse." 450 S.E.2d 635, 638 (W.Va. 1994). Thus, the bad faith delay in payment by the insurance

company is considered "tortious conduct that may give rise to a cause of action by a spouse for loss of consortium." Id.

Finally, in DuPont v. U.S., Judge Goodwin of the Southern District of West Virginia wrote: "Although the loss of consortium claim is a separate cause of action, plaintiffs commonly join loss of consortium and tort actions." 980 F.Supp. 192, 196 (S.D.W.V. 1997). Again, this implies that loss of consortium claims are always brought in the context of a tort action.

George does not point to, nor can this Court find, any authority under West Virginia law to support bringing a loss of consortium claim for an underlying breach of contract. Based on the cases cited above, the Court believes that, if this issue were presented to the West Virginia Supreme Court, it would agree that a plaintiff may not bring a loss of consortium claim in conjunction with a contract claim. Thus, Roderick George, Sylas George, and Mazzie George may not pursue loss of consortium claims in conjunction with George's promissory estoppel claims in Counts C, D, E, and F.

### III.  CONCLUSION

Because West Virginia law does not recognize a cause of action against a private employer for retaliatory discharge based on free speech, and does not permit loss of consortium claims arising from

**GEORGE ET AL. v. LABORATORY CORP. OF AMERICA, ET AL.    1:07CV90**

**ORDER GRANTING DEFENDANT'S PARTIAL MOTION TO DISMISS**

an underlying action based in contract, the Court **GRANTS** Lab. Corp.'s "Motion for Partial Dismissal of Amended Complaint" (dkt. no. 90), and **DISMISSES** Count B of the amended complaint, and the loss of consortium claims in Counts C, D, E, and F.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record.

DATED: November 13, 2007.

                                               /s/ Irene M. Keeley
                                              IRENE M. KEELEY
                                              UNITED STATES DISTRICT JUDGE